UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                Case No. 07-20283

Armando Canez (D-17),        Honorable Sean F. Cox

    Defendant.
_____/

## OPINION & ORDER

This matter is before the Court on three pretrial motions filed by Defendant Armando Canez ("Defendant" or "Canez").[1] For the reasons below, the Court shall: 1) DENY Defendant's Motion to Dismiss for Violations of Defendant's Right to a Speedy Trial (Docket Entry No. 292); 2) DENY Defendant's Motion for Order Setting a Daubert Hearing (Docket Entry No. 311); and 3) DENY Defendant's Motion To Dismiss Indictment For Government's Failure To Preserve Evidence (Docket Entry No. 314).

BACKGROUND

This case involves an alleged large-scale marijuana conspiracy which operated over the course of several years through several different states. Seventeen defendants have been indicted in this case.

The original indictment in this case was filed, under seal, on May 24, 2007. It charged Defendant Kevin Brewer and four other defendants with conspiracy to possess with intent to

---

[1]The pretrial motion filed by the Government will be addressed in a separate Opinion & Order.

1

distribute and to distribute marijuana, over 1000 kilograms, in violation of 21 U.S.C. §§ 841(a)(1) and 846.

The First Superceding Indictment was filed, under seal, on October 11, 2007. It added five other defendants.

The Second Superceding Indictment was also filed, under seal, on October 11, 2007. It added Jesus Javier as a defendant.

On March 25, 2008, another indictment was filed, charging the first ten defendants with conspiracy and adding a forfeiture count. This indictment was titled Second Superceding Indictment, although it was actually the third superceding indictment.

On April 24, 2008, a Fourth Superceding Indictment was filed, once again naming Jesus Javier Raya, and adding two new defendants.

On June 19, 2008, a Fifth Superceding Indictment was filed, adding two new defendants.

Sixth Superceding Indictment:

Canez was indicted, under seal, on December 4, 2008, in the Sixth Superceding Indictment. The Sixth Superceding Indictment charges Canez with two counts: 1) Conspiracy to Possess with Intent to Distribute and to Distribute Marijuana, Over 1000 Kilograms, in violation of 21 U.S.C. §§ 841(a)(1) & 846 (Count I); and Criminal Forfeiture, under 21 U.S.C. § 853 (Count II).

Canez was arrested on April 27, 2010, in Phoenix, Arizona. At that time, he was provided with the Sixth Superceding Indictment. The Sixth Superceding Indictment was then formally unsealed on May 3, 2010.

<u>Canez Files Three Pre-Trial Motions On June 15, 2010 And Requests An Extension To File Additional Motions:</u>

On June 15, 2010, Canez filed two pretrial motions (Docket Entry Nos. 291 & 292), along with a third motion wherein he asked this Court to extend the time for filing pretrial motions. (Docket Entry No. 293). This Court granted Canez's request for an extension of time, ruling that pretrial motions could be filed no later than July 25, 2010. (*See* Docket Entry No. 297).

<u>Seventh Superceding Indictment:</u>

After Canez filed the above motions, on July 20, 2010, the Grand Jury returned a Seventh Superceding Indictment. The Seventh Superceding Indictment charges Canez with Conspiracy to Possess with Intent to Distribute and to Distribute Marijuana, Over 1000 Kilograms, in violation of 21 U.S.C. §§ 841(a)(1) & 846 (Count I). It also contains allegations regarding criminal forfeiture.

<u>Additional Motions Filed By The Parties:</u>

On July 21, 2010, the Government filed its only pretrial motion – A Motion to Produce Voice Exemplars. (Docket Entry No. 305).

On July 26, 2010, Defendant filed several additional motions. Thus, as of July 26, 2010, the following pretrial motions were pending before this Court:

- Defendant's Motion to Dismiss Counts I & II the Indictment for Impermissible Vagueness (Docket Entry No. 291);

- Defendant's Motion to Dismiss for Violations of Defendant's Right to a Speedy Trial (Docket Entry No. 292;

- The Government's Motion to Produce Voice Exemplars (Docket Entry No. 305);

- Defendant's Motion For Order Setting A *Daubert* Hearing (Docket Entry No. 311);

- Defendant's Motion For Early Disclosure Of Brady And Jencks Act Information (Docket Entry No. 307);

- Defendant's Motion for Government Agents To Retain Rough Notes (Docket Entry No. 309);

- Defendant's Motion For Pretrial Discovery, Rule 12(b)(4) Notice And Summary Of Expert Report (Docket Entry No. 310);

- Defendant's Motion For Leave To File Bill Of Particulars (Docket Entry No. 312);

- Defendant's Motion For Bill Of Particulars (Docket Entry No. 313);

- Defendant's Motion To Dismiss Indictment For Government's Failure To Preserve Evidence (Docket Entry No. 314); and

- Defendant's Motion To Compel The Government To Produce Unredacted Documents (Docket Entry No. 315).

Canez Requests Adjournment Of Motion Hearing:

This Court set all of the pending motions for hearing on August 31, 2010. (Docket Entry No. 318). At the request of Canez, however, the hearing was adjourned until September 22, 2010. (Docket Entry No. 320).

The September 22, 2010 Hearing:

At the September 22, 2010, the parties indicated, on the record, that the parties had resolved all pending pre-trial motions with the exception of the following four motions: 1) Defendant's Motion to Dismiss for Violations of Defendant's Right to a Speedy Trial (Docket Entry No. 292; 2) The Government's Motion to Produce Voice Exemplars (Docket Entry No. 305); 3) Defendant's Motion For Order Setting A *Daubert* Hearing (Docket Entry No. 311); and 4) Defendant's Motion To Dismiss Indictment For Government's Failure To Preserve Evidence

4

(Docket Entry No. 314).

The Court then heard oral argument on those four motions and held an evidentiary hearing as to Defendant's Motion to Dismiss For Violations of Defendant's Right to a Speedy Trial.

The Government presented testimony from one witness, Federal Bureau of Investigation ("F.B.I.") Agent Michael Connelly. Defense Counsel cross-examined Agent Connelly. No other witnesses were presented at the hearing.

Agent Connelly gave detailed testimony regarding the investigation. The Court finds Agent Connelly to be a highly credible witness and fully credits his testimony.

Agent Connelly testified that in 2005 he began investigating a drug-trafficking organization in Detroit, Michigan after receiving information from a cooperating witness. During that investigation, the F.B.I. made several significant seizures of marijuana and cash in Detroit and Phoenix, Arizona.

Agent Connelly testified, in detail, as to how lower-level members of the organization were identified and indicted and then provided information and/or cooperation which led to further indictments of higher-level members of the organization.

In the spring of 2008, a cooperating witness identified Canez as supplying marijuana. Agent Connelly testified that during the time period from July 2008 through February 2009, the Government was aware of Canez's role in the organization, but had no idea as to the individuals who comprised the next level of supply. That is, they did not know the identity of Canez's supplier.

Agent Connelly testified that he did not delay Canez's arrest so that the Government

could gain a tactical advantage over Canez at trial. Rather, he testified that he did not arrest Canez until April 27, 2010, because he was trying to identify Canez's supplier. He explained that Canez had been arrested prior to that time, the investigation of the next level of the organization would have been compromised. Agent Connelly testified that the F.B.I. had spent several years investigating this large-scale organization and that they felt they had a good chance of identifying Canez's supplier if they waited to arrest Canez.

Agent Connelly further testified that the officers had a plan to identify Canez's supplier during this period of delay. The officers had learned that Canez had a particular warehouse in Phoenix that he used to transfer shipments of marijuana. If the officers could learn when the next shipment was expected, they could surveil that warehouse and interdict the courier bringing the shipment to Canez. They could then "work their way up the ladder" to the actual supplier to Canez. Ultimately, however, the officers were unable obtain the shipment information that they sought and Canez was arrested on April 27, 2010.

## ANALYSIS

I. <u>Defendant's Motion To Dismiss For Violations Of Defendant's Right To A Speedy Trial (Docket Entry No. 292)</u>:

In this motion, Canez seeks dismissal of the indictment under several different theories. First, he seeks dismissal under the Speedy Trial Act. Defendant also seeks dismissal of the indictment based on both pre-indictment delay and post-indictment delay.

"Pre-indictment delay and post-indictment delay present separate issues. The former is governed by the Fifth Amendment, *see United States v. Rogers*, 118 F.3d 466, 475-76 (6th Cir. 1997), while the latter is a Sixth Amendment matter, *see United States v. Graham*, 128 F.3d 372,

6

374 (6th Cir. 1997)." *United States v. Schaffer*, 586 F.3d 414, 424 (6th Cir. 2009). Thus, each asserted ground for relief will be addressed separately below.

  A.  Alleged Violation Of Speedy Trial Act:

In his motion, Canez first asserts that the indictment should be dismissed under the Speedy Trial Act, 18 U.S.C. § 3161. Canez acknowledges, however, that the Speedy Trial Act "ostensibly" provides no protection for him because 70 days have not passed since he was first brought before the Court. (Def.'s Br. at 4). Nevertheless, he asserts that the Court should dismiss the indictment under the act because the "Act does not contemplate a 16-month delay between indictment and arrest." (*Id*.). Canez has not provided any authority to support his position and the Court declines to dismiss the indictment under the Speedy Trial Act.

  B.  Pre-Indictment Delay (Due Process Clause of Fifth Amendment):

Canez asserts that the 19 months that passed from the time of the first indictment in this case and the time that Canez was indicted constitute impermissible pre-indictment delay.

Where an indictment is returned within the applicable statute of limitations period, it generally does not implicate Due Process concerns. *United States v. Crawford*, 60 Fed.Appx. 520, 529 (6th Cir. 2003) (citing *United States v. Lovasco*, 431 U.S. 783, 789 (1977)). Here, there is no dispute that the Sixth and Seventh Superceding Indictments were returned with in the applicable statute of limitations.

Nevertheless, pre-indictment delay may constitute a violation of Due Process under limited circumstances even if the indictment is filed within the applicable statute of limitations. To establish unconstitutional pre-indictment delay, the defendant must prove: 1) that the delay caused substantial prejudice to the defendant's right to a fair trial; and 2) the delay was an

intentional device by the government to gain a tactical advantage over the accused. *United States v. Rogers*, 118 F.3d at 475-65. The Sixth Circuit has observed that the "standard for pre-indictment delay is nearly insurmountable," especially because proof of actual prejudice is always speculative. *United States v. Roger*, 118 F.3d at 477 n.10.

Here, Canez has not shown that the 19-month delay caused substantial prejudice to his right to a fair trial. In his brief, he essentially asserts that the delay may have impacted his defense, but that he cannot really articulate how:

> Because of the extraordinary delay, Mr. Canez' case has not had the benefit of being party to the proceedings involving 14 of his co-defendants. This situation may compromise the reliability of a trial the way that neither party can prove, nor that matter, identify. It certainly cannot be expected that a mere review of the court's docket sheet can provide defense counsel with sufficient information regarding the proceedings involving the co-defendants. It is unknown whether it may have been beneficial for defense counsel to have specific knowledge of the disposition of the co-defendants' cases. This scenario most certainly raises due process concerns.

(Def.'s Br. at 7). Thus, Canez has not even alleged actual prejudice, much less offered proof of actual prejudice.

Canez has also failed to establish that the delay was an intentional device by the Government to gain a tactical advantage.

The Government contends that this case involves a complex and far-reaching drug conspiracy, that operated over the course of several years, in several states. It asserts that it took the F.B.I. several years to investigate and dismantle the conspiracy. "Many separate indictments necessarily needed to be returned based on new information gained during the course of the investigation pertaining to activities of the organization and its participants. Lower level members/defendants were indicted and then provided information which resulted, in conjunction

8

with other evidence, in further indictments against other members of the conspiracy including high level participants such as defendant Canez." (Govt.'s Br. at 1). Thus, the Government contends that any delay in returning an indictment against Canez resulted from investigative efforts. Canez has not offered any proof to establish otherwise.

"It is well established that a delay resulting from investigative efforts 'does not deprive [a defendant] of due process, even if his defense may have been somewhat prejudiced by the lapse of time.'" *United States v. Rogers*, 118 F.3d at 476 (quoting *United States v. Atisha*, 804 F.2d 920, 928 (6th Cir. 1986)). Accordingly, the Court declines to dismiss the indictment for pre-indictment delay.

C. <u>Post-Indictment Delay (Speedy Trial Provisions of Sixth Amendment)</u>:

It is undisputed that there was a 16-month delay between Canez's indictment and his arrest. Canez asserts that delay violates his right to a speedy trial under the Sixth Amendment.

When a defendant's constitutional right to a speedy trial has been violated, the only remedy is to dismiss the indictment with prejudice. *Barker v. Wingo*, 407 U.S. 514, 533 (1972).

In determining whether a defendant has been denied a speedy trial in violation of the Sixth Amendment, the Court is to balance: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of his right; and 4) the prejudice, if any, to the defendant. *Barker*, 407 U.S. at 530; *Graham,* 128 F.3d at 374. The length of the delay for speedy trial purposes is measured from the earlier of the date of indictment or the date of the arrest, whichever is earlier. *Redd v. Sowders*, 809 F.2d 1266, 1269 (6th Cir. 1987). No single factor is sufficient to establish a Sixth Amendment violation, "[r]ather, they are related factors and must be considered together with such other circumstances as may be relevant." *Barker,* 407 U.S at 533.

9

In its response to Defendant's motion, the Government cited the above *Barker* test and advanced arguments as to why it believes the test is not met.

On July 23, 2010, however, the Government filed a supplemental response brief in which is takes another position, "in the alternative." In this supplemental brief, the Government argues that "the delay between the December 4, 2008 indictment and the arrest of the defendant [on] April 27, 2010 should be analyzed under the due process clause because the indictment was sealed until defendant's arrest." (Docket Entry No. 308 at 1).

The Government asserts that several "circuits hold that were an indictment is sealed, the time between indictment and the unsealing of the indictment is analyzed under due process – that is, that the Sixth Amendment Speedy Trial Clause is not triggered until the indictment is unsealed." (*Id*.). The Government acknowledges that the Sixth Circuit has not adopted this position. It asserts that in *United States v. Jackson*, 473 F.3d 660, 664 (6th Cir. 2007), the court "assumed without deciding" that the Speedy Trial Clause governed that period.

The Court declines to adopt this alternative position advanced by the Government. In *Jackson*, the Sixth Circuit was aware that the indictment had been filed under seal yet still applied the *Barker* analysis. In addition, although neither party cited it, in an unpublished decision the Sixth Circuit appears to reject the proposition that delay while an indictment is sealed should not be considered:

> We note that this Court has implied that the speedy trial right is triggered by the filing of *any* indictment, whether sealed or not sealed . . . In *Jackson,* this Court considered a speedy trial challenge based on "the delays between the issuance and unsealing of the indictment and [defendant's] trial." *Jackson*, 473 F.3d at 664. . . This Court expressly recognized the distinction between pre- and post-unsealed indictment delay, but did not find that only post-unsealed indictment delay must be considered. *Id*. Moreover, the First, Fifth, and Eleventh Circuits have all

> rejected a bright-line rule and instead, in accordance with the Supreme Court's multi-factor balancing approach in *Barker,* have held that delay while an indictment is sealed may be considered.

*United States v. Williams*, 231 Fed.Appx. 457, 463. (6th Cir. 2007) (emphasis in original). Accordingly, this Court shall analyze this ground for relief by applying the *Barker* multi-factor balancing approach.

    1.    <u>Length Of Delay</u>:

"The length of delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that to into the balance." *Barker,* 407 U.S. at 530. In this matter, the Government concedes that the 16-month delay between indictment and arrest triggers a consideration of the remaining factors. (Docket Entry No. 301 at 9).

    2.    <u>Reason For The Delay</u>:

The second factor, is the reason for the delay. "[D]ifferent weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered." *Barker,* 407 U.S. at 531. "Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay." *Id.*

This case does not involve a deliberate attempt by the Government to delay trial, or delay Canez's arrest, in order to hamper the defense, nor does it involve negligence on the part of the Government in locating Canez. Rather, the Government has established, through the credible testimony of Agent Connelly, that the reason for the 16-month delay between the sealed

indictment and Canez's arrest was for a legitimate law enforcement purpose – to allow the officers an opportunity to identify Canez's supplier.

> 3. Assertion Of Right:

Canez was arrested on April 27, 2010. At that time he was provided with a copy of the Six Superceding Indictment, which was formally unsealed on May 3, 2010. Canez then filed the instant motion on June 15, 2010. The Government concedes that the third factor, whether and how promptly the defendant asserted his right to a speedy trial, weighs in Canez's favor because he promptly asserted his right to a speedy trial. (Govt.'s Br. at 11).

> 4. Prejudice:

"Prejudice is to be assessed in light of the interests of defendants which the speedy trial right was designed to protect," which are: 1) to prevent oppressive pretrial incarceration; 2) to minimize anxiety and concern of the accused; and 3) to limit the possibility that the defense will be impaired. *Barker,* 407 U.S. at 532.

Here, Canez asserts that the 16-month delay between his indictment and his arrest violates his right to a speedy trial. Because the indictment was filed under seal, Canez only became aware of the indictment when he was arrested. Thus, Canez could not have experienced anxiety or concern during the 16-month period at issue. In addition, because he was not incarcerated during the 16-month time period at issue, that delay did not cause oppressive pretrial incarceration. Accordingly, the impairment of Canez's defense is the sole remaining issue before the Court.

Here, Canez has not offered any evidence of actual prejudice. Rather, he asserts that the length of the delay was so lengthy as to amount to being presumptively prejudicial for purposes

of the fourth step of the *Barker* analysis.

In *Jackson,* however, the Sixth Circuit explained that when prejudice has been found to be presumptively prejudicial for purposes of the fourth step of the *Barker* analysis, the delay has been "shockingly long." The court noted that the delay of more than five years between arrest and trial in *Barker* was not sufficient to dismiss the indictment on speedy trial grounds. The *Jackson* court concluded that "[b]ecause neither a ten- nor twenty-month delay is extraordinary under our precedents," and given the lack of evidence of actual prejudice to the defendant or bad faith on the part of the government, the district court reasonably concluded there was no speedy trial violation.

Like the delay in *Jackson*, the 16-month delay at issue here is not "shockingly long," and there is no evidence of bad faith on the part of the Government. Thus, the delay at issue here is not sufficient under Sixth Circuit precedent to amount to being presumptively prejudicial for purposes of the fourth step of the *Barker* analysis.

In sum, although Canez promptly asserted his right to a speedy trial following his arrest, there is no evidence of bad faith on the part of the Government and the Government has established that it filed the indictment under seal and delayed arrest for legitimate law enforcement purposes. Moreover, Canez has not established any actual prejudice and the delay at issue is not long enough to amount to being presumptively prejudicial for purposes of the fourth step. The Court shall therefore deny the motion.

II.   Defendant's Motion For Order Setting A *Daubert* Hearing (Docket Entry No. 311:)

On July 2, 2010, Canez filed a "Motion for Order Setting A *Daubert* Hearing." In this motion, Canez notes that the Government is seeking a voice exemplar from him "in order to prove that it was the Defendant speaking during a recording made by a body bug worn by Morgan Mills, a witness for the Government." (Docket Entry No. 311 at 1). Canez asserts – without citation to any authority – that "[i]n order for the introduction of such evidence the Government will be required to call an expert witness to identify the voice on the body bug recording as that of Canez." (*Id.*). Canez states that the Government has not yet disclosed a voice identification expert and asserts that "if they do intend to call such an expert, he must be qualified and the basis of his scientific testimony must be established." (*Id.*).

In response, the Government asserts that a *Daubert* hearing is not necessary because the Government does not intend to call an expert witness to identify Canez's voice on recordings it will introduce at trial. (Docket Entry No. 324 at 1).

Because the Government does not intend to call an expert witness, a *Daubert* hearing is not required.

Moreover, to the extent that Canez asserts that the Government cannot introduce the recordings in question without an expert witness, Canez has provided no authority for that assertion. In addition, the authority cited by the Government supports its position that no expert witness is required. The Government relies on FED. R. EVID. 901 and *United States v. Cooke*, 795 F.2d 527 (6th Cir. 1986).

Rule 901 (a) provides that the "requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that

the matter in question is what its proponent claims." Subsection (b)(5) provides the following as an example of authentication or identification conforming with this rule:

> (5) Voice identification. Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.

FED. R. EVID. 901(b)(5). In discussing subsection, the Advisory Committee Notes to FED. R. EVID. 901(b) state that "[s]ince aural voice identification is not a subject of expert testimony, the requisite familiarity may be acquired either before or after the particular speaking which is the subject of the identification, in this respect resembling visual identification of a person rather than identification of handwriting."

In *United States v. Cooke*, the evidence the Government presented at trial included tape recordings of telephone conversations between the defendant and others involved in the alleged conspiracy. A cooperating co-defendant and an agent testified at trial. Recordings of the telephone conversations were played at trial and an agent, who testified he had heard the defendant speak in open court, identified the defendant's voice. It also appears that a co-defendant (Brian Crossty) identified the defendant's voice at trial. On appeal, the defendant challenged the manner of voice identification. The Sixth Circuit explained that the "standard for the admissibility of an opinion as to the identity of a speaker is merely that the identifier has heard the voice of the alleged speaker at any time." *Id*. at 531. After noting that the agent had testified that he had heard the defendant's voice in open court in both Florida and Ohio, and that Brian Crossty has testified that he had obtained marijuana from the defendant on at least fifteen occasions, the Sixth Circuit concluded that "the standard of admissibility was satisfied." *Id.*

Accordingly, the Court concludes that, under FED. R. EVID. 901 and *United States v. Cooke*, the Government need not have an expert witness identify Canez's voice at trial.

III. <u>Defendant's Motion To Dismiss Indictment For Government's Failure To Preserve Evidence (Docket Entry No. 314:)</u>

In this motion, Canez notes that the Seventh Superceding Indictment mentions five separate seizures of marijuana. Canez asserts that a disclosure provided by the Government indicates that "all of the drug evidence in this case was destroyed after the Defendant was indicted but before he was arrested. As a consequence, he was never given notice of the destruction of the evidence. And, *unless the Government can produce the appropriate documentation proving that samples were taken and testing was performed on the seizures of drug evidence*," the Government should not be permitted to introduce evidence of the seizures at trial. (Def.'s Br. at 2) (emphasis added).

In response, the Government states that the motion is falsely premised because the Government "has not destroyed the drug evidence, rather it has destroyed the quantities of various marijuana seizures in excess of a certain threshold quantity which the government is required by regulation to maintain. In other words, the government has available representative samples of marijuana in this case pertaining to all actual seizures[2] of marijuana from the organization." (Govt.'s Br. at 1).

At the September 22, 2010 hearing, Defense Counsel acknowledged that the Government

---

[2]The Government does state that it did not actually seize the marijuana referenced on June 17, 2006 date in the indictment. It contends that the "reference to the delivery of 1,100 pounds of marihuana by the organization to Kevin Brewer in Detroit (page 4 of the Seventh Superceding Indictment) will be proved circumstantially through other means." (*Id.*).

16

had provided the documentation in question. He asserted, however, that after reviewing the documentation provided, he did not believe some items "matched up." Defense Counsel indicated that, at this point, he cannot determine if evidence was destroyed or not. (*See* 9/22/10 Hrg. Tr.). Accordingly, Defendant has not established that the Government has failed to preserve any evidence and the Court shall deny this motion without prejudice.[3]

CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that:

1) Defendant's Motion to Dismiss for Violations of Defendant's Right to a Speedy Trial (Docket Entry No. 292) is DENIED;

2) Defendant's Motion For Order Setting A *Daubert* Hearing (Docket Entry No. 311) is DENIED; and

3) Defendant's Motion To Dismiss Indictment For Government's Failure To Preserve Evidence (Docket Entry No. 314) is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: September 24, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 24, 2010, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager

---

[3] At the September 22, 2010 hearing, the Government offered to review the documentation with Defense Counsel. The parties agreed that, if they cannot resolve this issue after meeting and conferring, Defendant may raise this issue at trial.